IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08cr00493-1 |
| | ) | |
| ALISON LEVON BOYD | ) | |
| also known as ALYSON LEVON BOYD | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

Before the court is Defendant Alison Levon Boyd's motion to suppress evidence of a Smith & Wesson .40 caliber semiautomatic pistol seized during a search of his rental car by officers of the Greensboro, North Carolina, Police Department ("GPD"), as well as statements he made to the officers regarding the handgun.[1] (Doc. 5 at 1; see Doc. 1 at 1.) Boyd appears to contend that the admission of this evidence would violate his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Doc. 6 at 2-3.) The Government responds that this evidence is admissible because Boyd voluntarily consented to the search and spontaneously uttered the statements. (Doc. 9 at 6-10.) An evidentiary hearing was held on February 3, 2009. For the reasons set forth herein, the motion is denied.

---

[1] In a one-count indictment, filed in December 2008, the Government charged Boyd with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 921(g)(1) and 924(a)(1). (Doc. 1 at 1.)

## I. BACKGROUND

The court finds the following facts from the hearing of February 3, 2009, including the testimony of Officers R.H. Coggins and Christopher Cottonaro of the GPD, Defendant Alison Levon Boyd, and Robert James Murphy, who was Boyd's companion on the night of the search. At the time of the search, Coggins and Cottonaro were assigned to the Eastern Division Patrol Squad and had worked as police officers for approximately three and one-half to four years. While Boyd admitted to having a prior felony conviction for conspiracy to interfere with commerce by threat or violence, Murphy admitted to having felony convictions for bank robbery and possession of cocaine. In weighing the evidence, the court finds the testimony of the officers to be more credible.

On June 21, 2008, Coggins was dispatched to a domestic disturbance on Buchanan Road in Greensboro, North Carolina. Although the suspect had fled by the time Coggins arrived, the victim provided the suspect's name and a general description of his clothing. Coggins learned that the suspect was wanted on an outstanding warrant and planned to take him into custody. The victim also stated that the suspect fled in the direction of the Claremont Courts public housing community. Coggins realized that this course would eventually lead the suspect to Kim's Food Mart on Phillips Avenue, which was only a few blocks away and

2

was known to officers as an open-air drug market, gang location, and cornerstore hangout. After apprising his assist unit, Officer Cottonaro, of the situation, Coggins drove to Kim's Food Mart post-haste.

Upon arriving at Kim's Food Mart a minute or two later, Coggins saw an individual matching the general description of the suspect exiting the store and attempting to enter the passenger seat of a Chevrolet Malibu parked facing the side of the store. Coggins parked his marked patrol car behind and beside (but not blocking) the Malibu. Coggins approached the passenger side door and, before the individual closed it, asked him to step out for a brief conversation.

The individual identified himself as Robert Murphy, which was not the name of the suspect, and said he had no identification. Based on his training and experience, Coggins knew that individuals who have active warrants for their arrest will avoid offering their identification and provide fictitious names. Coggins asked Murphy if he would consent to a frisk of his person for identification. Murphy consented, but no identification, contraband, or weapons were found.

During the frisk of Murphy, Coggins noticed that the driver of the Malibu was shifting uncomfortably in his seat. Coggins walked around the Malibu to speak to the driver. Before Coggins could engage him in conversation, the driver was presenting his

3

identification and rental car agreement, which identified him as Alison Boyd. Boyd's hands were visibly shaking as he offered the documents. About this time, Cottonaro arrived and parked his marked patrol car at the side of the parking lot to avoid blocking other vehicles. Neither patrol car had its emergency lights on at any time.

Based on the reputation of the area, Boyd's nervousness, and the presence of a rental car, Coggins suspected narcotics involvement. Coggins asked Boyd to exit the car, and Boyd complied. Coggins first inquired whether Boyd had any weapons or narcotics on his person, and Boyd said that he had none. Coggins then requested consent to frisk him, and Boyd consented. No weapons or narcotics were found. Coggins subsequently asked Boyd if he had any narcotics in the car. Boyd again replied that he had none and consented to a search of the Malibu.[2]

Coggins discovered a Smith & Wesson .40 caliber semiautomatic pistol concealed under the driver's seat. He immediately used a "ten code," which is a code that officers use to convey sensitive information to each other without alerting potential suspects, to ask Cottonaro to detain Boyd. When Cottonaro asked why, Coggins used another ten code to indicate

---

[2] Both Coggins and Cottonaro testified that they heard Boyd consent to the search of the Malibu. Although Boyd testified that he did not consent to this search, the court finds that his testimony on this point is not credible.

4

that he had found a weapon in the rental car. At approximately the time of the handcuffing and detention, Boyd offered, "Let me tell you about the gun. I had a gun pulled on me recently." Coggins placed Boyd in the back seat of the patrol car as he checked Boyd's criminal history. When that revealed no outstanding warrants or prior felony convictions,[3] Coggins issued him a citation for carrying a concealed weapon, a misdemeanor under North Carolina law, and seized the handgun.

Before releasing Boyd and Murphy, Coggins requested and received their consent to conduct a more invasive search of their persons behind Kim's Food Mart. The searches involved the complete or partial removal of certain articles of clothing but no physical contact by the officers. No contraband was found, and Boyd and Murphy were released.

Within a few weeks of the encounter, Coggins learned that Boyd actually had a prior felony conviction. Coggins swore out an arrest warrant charging Boyd with possession of a firearm by a convicted felon. Boyd was indicted by a federal grand jury in December 2008.

**II. ANALYSIS**

Boyd seeks to suppress the handgun seized by GPD officers during a search of his rental car, as well as the statements he

---

[3] Coggins also investigated Murphy's criminal history, which confirmed that Murphy had provided his actual identity.

5

made after the discovery of the handgun. (Doc. 5 at 1.) He appears to contend that the admission of the physical evidence would violate his right against unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, because the GPD officers did not have his voluntary consent to conduct the search. (Doc. 6 at 2-3.) Boyd also appears to contend that the admission of the statements would violate his right against self-incrimination, pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution, because he was not read his Miranda rights before making the statements. (Id. at 3.) The Government argues that Boyd voluntarily consented to the search of the car and that his Miranda rights were inapplicable because his statements were spontaneous utterances. (Doc. 9 at 6-10.)

**A.   Right Against Unreasonable Search and Seizure**

The Fourth Amendment protects against "unreasonable searches and seizures."[4] U.S. Const. amend. IV. "The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief encounters between police and citizens, which require no objective

---

[4]   The Fourteenth Amendment incorporates the rule excluding evidence obtained through an illegal search or seizure and makes it applicable to the states. Mapp v. Ohio, 367 U.S. 643, 655 (1961).

6

justification." United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002) (internal citations omitted). Although the Government asserts that the events underlying this motion fall within the third category (Doc. 9 at 4), the court need not determine the precise category because a search and seizure are not unconstitutional if the defendant voluntarily consents. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (holding that voluntary consent is an exception to the Fourth Amendment's requirement of a search warrant issued upon probable cause); Weaver, 282 F.3d at 309-13; United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996) (en banc).

**1. Voluntary Consent**

The Government bears the burden of proving, by a preponderance of the evidence, that it obtained a knowing and voluntary consent to a search. United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). "The Government must shoulder the burden of proving that an individual freely and intelligently [gave] . . . unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied." United States v. Morrow, 731 F.2d 233, 235-36 (4th Cir. 1984) (internal quotation marks and citation omitted). To determine the existence of voluntary consent, the inquiry is whether the defendant exercised his own "essentially free and unconstrained

7

choice" or whether his will was "overborne and his capacity for self-determination critically impaired." United States v. Watson, 423 U.S. 411, 424 (1976) (quoting Schneckloth, 412 U.S. at 225).

Boyd puts the Government to its burden of proving that he voluntarily consented to the search of the rental car.[5] He asserts that he specifically denied such consent, arguing that he would not have voluntarily given it when he knew that his gun was under the seat and that such a search (he believed) was not required by law.[6] The weight of the testimony indicates otherwise, however, and the court finds that Boyd consented to the search of the rental car. Thus, the only remaining issue is whether his consent was voluntary.

### 2. Totality of the Circumstances

Courts determine the existence of voluntary consent based on the "totality of the circumstances." Schneckloth, 412 U.S. at 227. In making this assessment, "it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such

---

[5] The officers also conducted a frisk of Boyd and Murphy, as well as a more invasive search. None of these searches yielded any contraband, and they are not the subject of this suppression motion except to the extent they inform the voluntariness of the search of the rental car.

[6] Boyd instead speculates that Coggins was determined to search the rental car for drugs because it had a Florida license plate and was located in a high-crime area.

8

as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." Lattimore, 87 F.3d at 650; accord Weaver, 282 F.3d at 312. The degree an individual cooperates with the law enforcement officers, United States v. Smith, 30 F.3d 568, 571 (4th Cir. 1994); United States v. Whitehead, 428 F. Supp. 2d 447, 452 (E.D. Va. 2006), as well as whether the accused knew he had the right to refuse consent are also relevant. Lattimore, 87 F.3d at 650; accord United States v. Boone, 245 F.3d 352, 362 (4th Cir. 2001). No single factor is dispositive. Weaver, 282 F.3d at 313.

        **a.    Personal Characteristics**

Boyd's personal characteristics suggest that he voluntarily consented to the search of the rental car. At the time of the search, Boyd was 33 years old (Gov't Ex. 1) and was gainfully employed in a full-time job performing set-up work for retail stores. Lattimore, 87 F.3d at 651. Boyd also was "familiar with the criminal justice system and its consequences," United States v. Elie, 111 F.3d 1135, 1145 (4th Cir. 1997); see Watson, 423 U.S. at 424-25, given his prior felony conviction in the Northern District of New York for conspiracy to interfere with commerce by threat or violence in violation of 18 U.S.C. § 1951. In fact, at the time of the search, Boyd was still on supervised release for that conviction. No evidence suggests that Boyd was "under the influence of any narcotics[,] . . . mentally

9

deficient[, or otherwise] unable to exercise free choice" when he consented to the search of the rental car. United States v. Tyson, 360 F. Supp. 2d 798, 806 (E.D. Va. 2005). Finally, Boyd has not "display[ed] any [other] characteristics that would render him incapable of voluntarily consenting or withholding consent to the search" of his rental car. United States v. Hinton, 27 F. App'x 252, 254 (4th Cir. 2001) (per curiam).

### b. Conditions of Consent

The conditions under which Boyd consented to the search were neither coercive nor intimidating. The encounter took place in a parking lot adjacent to Kim's Food Mart. Weaver, 282 F.3d at 312. Although the events occurred at night, Elie, 111 F.3d at 1145, the parking lot has a reputation as a popular neighborhood gathering place, gang location, and open-air drug market.

The officers' conduct also supports a finding of voluntary consent. Only two officers were present during the entire encounter, United States v. Blanc, 245 F. App'x 271, 273-74 (4th Cir. 2007) (per curiam) (finding that the presence of two officers was not inherently coercive); United States v. Salas, No. 98-4374, 1998 U.S. App. LEXIS 32633, at *7 (4th Cir. Dec. 31, 1998) (per curiam) (same), even though they had to confront two potential suspects. Although the officers were uniformed and armed, Weaver, 282 F.3d at 312, they never displayed their

10

weapons, detained the defendant (until after the discovery of the handgun), or made any physical contact (other than the amount necessary to frisk him). Blanc, 245 F. App'x at 273; Smith, 30 F.3d at 571. The officers also never raised their voices unnecessarily or made threats or promises to induce Boyd's consent. Tyson, 360 F. Supp. 2d at 806; see Weaver, 282 F.3d at 312 (assessing the words, tone of voice, and general demeanor of law enforcement officers). Even though the officers drove marked patrol cars, they neither activated their blue lights nor parked their patrol cars so as to impede the movement of Boyd's rental car.

### c. Cooperation

A defendant's cooperation mitigates a finding of coercion. Smith, 30 F.3d at 571. "An encounter remains consensual as long as the citizen voluntarily cooperates with the police." Hinton, 27 F. App'x at 255; accord Blanc, 245 F. App'x at 273 (citing Weaver, 282 F.3d at 309-10). In this case, the testimony reveals that Boyd cooperated with the officers throughout the encounter. Boyd voluntarily provided his license and rental car information before Coggins could ask for it. At the request of Coggins, Boyd exited the car, allowed a frisk, consented to the search of the rental car, and agreed to a more invasive search of his person. Boyd's companion, Murphy, was likewise

11

cooperative with the officers. These factors militate against any finding of coercion and favor voluntariness.

### d. Knowledge of Right to Refuse Consent

The Fourth Amendment does not require law enforcement officers to "inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." United States v. Drayton, 536 U.S. 194, 206 (2002); see Tyson, 360 F. Supp. 2d at 808. The Government need not establish that Boyd knew of this right, Schneckloth, 412 U.S. at 232-33; United States v. Brugal, 209 F.3d 353, 362 (4th Cir. 2000), and its failure to do so establishes no presumption of invalidity. Drayton, 536 U.S. at 207. Rather, it is one factor to be taken into account. Id. at 206-07.

In this case, there is no indication that GPD officers ever advised Boyd of his right to refuse consent to a search of his rental car. Notwithstanding the lack of direct advice to Boyd, he was undoubtedly aware of his right, as counsel noted, because of his experience in the criminal justice system. Boone, 245 F.3d at 362. Having given his consent, Boyd offers no evidence that he thereafter withdrew it by asking the officers to discontinue the search of the rental car. Lattimore, 87 F.3d at 651.

For all these reasons, therefore, the court concludes that Boyd voluntarily consented to the search of the rental car.

12

**B. Right Against Self-Incrimination**

The Fifth Amendment to the U.S. Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself."[7] U.S. Const. amend. V. This privilege against compulsory self-incrimination is protected by prophylactic procedural rules that must be followed during custodial interrogations. Miranda v. Arizona, 384 U.S. 436, 444 (1966). The procedural rules require law enforcement officers to warn a suspect, and obtain a waiver, of his rights before conducting custodial interrogation.[8] United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005). The Government bears the burden of "demonstrat[ing] the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 364 U.S. at 444. As discussed below, however, courts have recognized certain limited exceptions to the procedural safeguards of Miranda.

Boyd moves to suppress the admission of statements he made to the officers after the discovery of the handgun under the driver's seat. During the evidentiary hearing, Boyd admitted stating to the officers: "Let me tell you about the gun. I had

---

[7] The Fourteenth Amendment incorporates provisions of the Fifth Amendment and makes it applicable to the states. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

[8] The Miranda warnings consist of the "right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

13

a gun pulled on me recently." Boyd argues that these statements were obtained in violation of Miranda because the officers never informed him of his Fifth and Fourteenth Amendment privilege against self-incrimination. The Government responds that the Miranda warnings were inapplicable because no questioning occurred and his statements were spontaneous utterances.

### 1. Custodial Interrogation

Law enforcement officers must inform an accused of his Miranda rights before conducting a custodial interrogation. Id. at 471. A suspect is "in custody" for Miranda purposes if "there [was] a formal arrest or restraint on freedom of movement of the degree associated with formal arrest," Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam) (internal quotation marks and citations omitted), which may include detaining and handcuffing him. United States v. Bullard, No. 95-5785, 1996 U.S. App. LEXIS 30891, at *14 (4th Cir. Nov. 27, 1996). The term "interrogation" "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). In determining whether statements constitute "interrogation," courts "focus[] primarily upon the perceptions of the suspect, rather than the intent of the police." Id. Statements made in violation of

14

these rules are generally inadmissible in the prosecution's case in chief. Stansbury, 511 U.S. at 322; United States v. Leshuk, 65 F.3d 1105, 1108 (4th Cir. 1995).

In this case, Boyd appears to argue that he had satisfied the custody and interrogation prerequisites for receiving the Miranda warnings at the time of his statements. (Doc. 6 at 3.) This argument fails because the testimony reveals that neither officer asked any questions, or made any statements, to Boyd regarding the handgun. At most, the officers merely asked Boyd to produce identification, exit the car, and consent to various searches. United States v. Brown, No. 97-4676, 1998 U.S. App. LEXIS 22311, at *11 (4th Cir. Sept. 11, 1988) (finding that a request for consent to search does not constitute interrogation). Boyd never rebutted the officers' testimony that he was asked no questions. The officers also testified that they used "ten codes" when communicating about Coggins' discovery of the handgun under the driver's seat. Boyd confirmed that he heard the officers calling some numbers and even admitted that he did not know the meaning of the "ten code." Based on the evidence adduced at the hearing, the court finds that Boyd was not questioned and that the officers' conduct was not reasonably likely to elicit his statements.[9]

---

[9] The testimony reveals discrepancies regarding whether Boyd made the statements while in custody, as discussed *infra* in Section II.B.2.

Thus, the statements were not the product of "interrogation" and are not barred by the Fifth Amendment.

### 2. Spontaneous Utterance Exception

Courts also have recognized limited exceptions to the procedural safeguards of <u>Miranda</u>, including voluntary or spontaneous statements. "'Volunteered statements of any kind are not barred by the Fifth Amendment.'" <u>Innis</u>, 446 U.S. at 300 (quoting Miranda, 384 U.S. at 478). Similarly, spontaneous statements are not barred by the Fifth Amendment. <u>United States v. Wilson</u>, No. 97-4768, 1998 U.S. App. LEXIS 37985, at *8 (4th Cir. Dec. 31, 1998) (finding that unsolicited statements were admissible); <u>United States v. Wright</u>, 991 F.2d 1182, 1186-87 (4th Cir. 1993) (holding that unsolicited statements uttered during a search, without provocation, were not barred by the Fifth Amendment); <u>United States v. Rhodes</u>, 779 F.2d 1019, 1032 (4th Cir. 1985) ("<u>Miranda</u> does not protect an accused 'from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.'"). If a statement falls within this exception, it is deemed not to constitute "interrogation" and is admissible at trial. The Government bears the burden of proving voluntariness or spontaneity by a preponderance of the evidence.

---

Based on the finding of no "interrogation," the court need not determine whether Boyd made the statements while in custody.

16

E.g., United States v. Braxton, 112 F.3d 777, 781 (4th Cir. 1997) (citing Lego v. Twomey, 404 U.S. 477, 489 (1972)).

In this case, the Government claims that Miranda is inapplicable because the statements were spontaneous utterances. (Doc. 9 at 9-10.) The witnesses have different recollections regarding the circumstances of the statements. For example, Coggins testified that, upon discovering the handgun under the driver's seat, he gave Cottonaro the ten code for detaining Boyd. Coggins claimed that Boyd made the statements immediately after the ten code, as the two officers began to move toward him. Cottonaro testified that the statements were made one or two minutes after Coggins had relayed the ten code alerting him of the presence of a firearm, which had occurred around the time of the handcuffing and detention of Boyd. Boyd testified that he made the statements while detained in the backseat of the patrol car.

Although their recollections differ regarding the timing of the statements, the witnesses all agree on at least one thing: Boyd spontaneously blurted out, without any provocation whatsoever, "Let me tell you about the gun. I had a gun pulled on me recently." These statements were not the product of any interrogation. The officers never asked any questions or made any statements to Boyd regarding the handgun. Furthermore, the

17

statements were not preceded by any discussion of the discovery of the handgun that was intelligible to Boyd.

Based on the evidence adduced at the hearing, the court finds that Boyd was not questioned, coerced, or threatened, nor was the officers' conduct reasonably likely to elicit the statements. Thus, Boyd's statements were unsolicited, spontaneous, and not barred by the Fifth Amendment.

**III. CONCLUSION**

The court has considered all the arguments raised by the motion to suppress. For the reasons set forth above, the court finds that the totality of the circumstances demonstrates that Boyd voluntarily consented to the search of the rental car. The record also demonstrates that Boyd's statements were not made during custodial interrogation and were, in fact, spontaneous utterances. Thus, Boyd's motion to suppress (Doc. 5) is DENIED.[10]

                                              /s/   Thomas D. Schroeder
                                    United States District Judge

February 9, 2009

---

[10] Because of the disposition of the motion to suppress, the court has not assessed whether the search of the rental car was otherwise warranted in the absence of consent.

18